**Mary C. NORTHERN, Petitioner,**

v.

**STATE of Tennessee, DEPARTMENT OF HUMAN SERVICES, Respondent.**

Supreme Court of Tennessee.

Feb. 14, 1978.

Carol L. McCoy, guardian ad litem, in pro. per., Louis Farrell, Jr., Nashville, for guardian ad litem.

William B. Hubbard, Deputy Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., Nashville, for respondent.

OPINION

HARBISON, Justice.

This case is before the Court on petition for writ of certiorari from a final judgment of the Court of Appeals, Middle Section, entered on February 8, 1978.

The case arises under recent legislation designed to provide protective health care and related services to elderly persons, T.C.A. §§ 14–2301 et seq. Portions of the statute deal with the intervention of the Department of Human Services by filing a complaint in Chancery Court for authority to render protective services when an elderly person is in imminent danger of death and lacks capacity to consent to the services. The statutes require that such an application be given priority, and the chancellor is authorized to hear the matter in chambers or during a regular court session. The chancellor is authorized to appoint an organization or individual to be responsible for the personal welfare of such elderly person and to consent to protective services in his behalf.

The statute provides for notice and a hearing and contemplates close and continuous monitoring of such a case by the trial court. T.C.A. § 14–2307 expressly provides that either party "may move for review of the decree of the court at any time."

While such cases are, of course, open to appellate review, the statutes clearly contemplate that proceedings thereunder should be administered primarily in the trial court.

The present proceedings were instituted by the Department of Human Services, alleging that the petitioner, Mary C. Northern, an elderly recluse, had been found living in deplorable and entirely unfit conditions, that her health had been impaired and that a serious condition of gangrene had developed in each of her feet. The petition contained the requisite allegations of lack of mental capacity, and sought an order of the chancery court appointing a responsible person or agency to give necessary consent for medical treatment, including amputation of the gangrenous feet of the petitioner, as recommended by her attending surgeons.

A guardian ad litem was appointed, and two evidentiary hearings were held in the chancery court. The statement contained in the brief of the guardian ad litem before this Court that she was never given an opportunity to present testimony or examine witnesses is not supported by the record. Understandably, all persons concerned with the matter were faced with an emergency, and many of the formalities surrounding an ordinary civil proceeding in the chancery court were apparently not insisted upon.

We have carefully examined the record before the Chancellor, however, and find that it contains material evidence to sustain his conclusions that the petitioner was in imminent danger of death and that she lacked sufficient capacity to understand her condition and make a reasoned decision about the recommended surgical procedures.

There is no conflict in the medical or psychiatric testimony, nor has the guardian ad litem or anyone else on behalf of the petitioner introduced any further medical or psychiatric testimony, to contradict that which was before the Chancellor when his final decree was made. No attempt has been made to have the Chancellor review his latest order or to introduce more complete or more current evidence before him. Instead the matter has been taken to the appellate courts, and their powers of supersedeas and intervention have been invoked. In this Court the guardian ad litem challenges the sufficiency of the evidence and of the proceedings before the Chancellor.

It appears to us that the guardian ad litem could have produced additional proof before the Chancellor, if she had desired to do so, and could have made timely objections if she felt that more formal evidentiary proceedings were indicated. Her objections in this Court are not sustained by the record, and we do not deem it appropriate for this Court to interfere with the decree of the Chancellor. The case will be remanded to the chancery court, and, there, of course, the guardian ad litem will be free to make such applications to the Chancellor as she deems appropriate, under T.C.A. § 14–2307.

The guardian ad litem appealed the ruling of the Chancellor to the Court of Appeals. That Court affirmed, making certain modifications and imposing some additional restrictions to those contained in the decree of the Chancellor, to the end that surgery would not be performed unless and until deemed absolutely necessary as a life-saving measure by the attending physicians.

Because it was asked to supersede the decree of the Chancellor, the Court of Appeals itself conducted an evidentiary hearing and received additional testimony. The guardian ad litem attacks the regularity of these proceedings, but we do not deem it necessary or material to discuss the same, because the proceedings before the Court of Appeals merely resulted in an amplification of the testimony, the findings and the medical conclusions which had already been expressed before the Chancellor.

The statutes in question appear to be carefully drawn, and no constitutional infirmity or lack of procedural safeguards has been demonstrated.

It is apparent that all persons concerned, including the Department, the guardian ad litem and the courts have sought diligently and conscientiously to act in the best interests of the petitioner, in a situation which is both sensitive and difficult.

In our opinion the entire case turns upon whether or not Miss Northern is or is not competent to understand and make a reasoned decision as to the proposed surgery. If she is not competent, then clearly the statutes authorize legal intervention and the appointment of a responsible person or agency to act for her. If she is mentally competent, the statutes are not operative. The uncontradicted psychiatric testimony, which was introduced by the guardian ad litem herself, is that she is not competent. The guardian ad litem has expresssed her personal opinion to the contrary, but she has offered no evidence, lay or expert, to that effect. She is understandably in a difficult position, because she necessarily has to attempt to carry out the expressed wishes of her ward, but courts can only act

upon evidence, and in this area primarily expert testimony, and not impressions or reactions.

We have carefully considered the petition for certiorari, and all members of the Court have conferred at length concerning the same. We do not believe that upon the present record, any other conclusion can be sustained except that reached by the Chancellor. The assignments of error are overruled, the petition for certiorari is denied, and this cause is remanded to the chancery court for its monitoring and supervision. The order of the Court of Appeals will remain in effect unless and until the Chancellor sees fit to modify it upon receipt of further proof as to the condition and progress of the patient.

Costs accrued to date will be paid by the Department of Human Services.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.